IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2007

## STATE OF TENNESSEE v. CAROLINE WHITE

Direct Appeal from the Circuit Court for Chester County
Nos. 99-047 and 00-66     Roy B. Morgan, Jr., Judge

No. W2006-02580-CCA-R3-CD  - Filed June 11, 2007

The appellant, Caroline White,[1] pled guilty to aggravated assault and robbery, and she received a total effective sentence of three years intensive probation.  Subsequently, the trial court revoked the appellant's probation and ordered her to serve her sentence in confinement.  On appeal, the appellant challenges the revocation and argues that she should have been given another probationary sentence. Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Kandi Kelley, Jackson, Tennessee, for the appellant, Caroline White.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On September 14, 1999, the appellant pled guilty to aggravated assault and robbery.  As a condition of the plea agreement, the appellant received a sentence of three years for each conviction to be served on "intensive probation." On October 13, 2000, the appellant's probation was "revoked and reinstated" due to the appellant's failure to report to her probation officer, pay supervision fees, verify employment, get permission before changing addresses, and submit a DNA sample.

---

[1] In the record, the appellant's first name is also spelled "Carolyn"; however, we will utilize the spelling contained in the indictments.

Thereafter, on February 27, 2001, a probation revocation warrant was issued, charging the appellant with "[a]bsconding probation supervision; failure to pay fees; and failure to submit a DNA specimen." A second violation warrant was filed on June 23, 2006, contending that the appellant violated probation by being arrested on March 5, 2006, for theft of property valued between $500 and $1000.

At the revocation hearing, the trial court informed the appellant of the allegations contained in the probation violation warrants and asked the appellant if she wished to admit or deny the violations. The appellant responded, "I admit to violate." In her own behalf, the appellant explained that

> when I was 17, I was violated in October, I had just had a baby in December, but I was paying my probation fees before I couldn't pay it no more. When I first caught this charge, I had a child, and when I was 17 and I was violated, I was pregnant with my second child, and I just couldn't pay it. But I never ran. I was still at the same house and I was working. I just couldn't do it. I worked up 'til I couldn't work no more.

The appellant conceded that she had been convicted of the theft charge alluded to in the second revocation warrant.

The trial court advised the appellant that "I've not put people in jail for not paying the fees." However, the court expressed concern that the appellant had failed to do "the simplest thing," namely report to her probation officer. The court maintained that it was most interested in whether the appellant would report to her probation officer and not violate the law if she were again granted probation. The appellant stated that she had reported to her probation officer until she knew that "they was gonna violate me." She explained that "it wasn't no use for me to report no more" if a violation warrant was going to be issued. However, the appellant said, "I apologize. I mean, I'm older and I'm better now. I can do it. I can do my probation now. I'm grown; I ain't no child."

The trial court found that the appellant violated the terms of her probation by failing to pay fees but afforded that failure no weight in determining the effect of her revocation.[2] However, the trial court was deeply concerned about the appellant failing to report and violating the law. Additionally, the trial court noted that the appellant had previously violated probation and had been given a second chance at a probationary sentence. The court stated that the appellant

> is not a proper candidate for probation and that she's failed to do the simplest of things and that's report, and then on top of that she has violated the law again now that she's become older and wiser. This

---

[2] We note that the appellant's judgments reflect that the appellant's supervision fees and her costs of supervision were waived; however, the appellant was ordered to pay restitution.

very year she went out and violated the law and has been convicted of theft of property, which is a similar offense to the robbery situation, taking something that doesn't belong to you.

The court revoked the appellant's probation and ordered her to serve her original sentence in confinement. On appeal, the appellant argues that the trial court erred in revoking her probation and ordering that she serve her sentence in confinement.

## II. Analysis

A trial court is authorized to order an appellant to serve the balance of her original sentence in confinement upon finding by a preponderance of the evidence that the appellant has violated the terms of her probation during "the maximum time that was directed and ordered by the court for the suspension." See Tenn. Code Ann. §§ 40-35-310 and -311(e) (2006); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). An abuse of discretion exists when "the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred." State v. Conner, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995).

In the instant case, the first violation warrant was issued on February 27, 2001, well within the original sentence imposed by the trial court, interrupting the probationary period until the trial court heard the issues raised in the warrant. State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001). Further, the State was authorized to, as it did on June 23, 2006, amend or file a subsequent revocation warrant while the original revocation warrant was still pending. Id. Accordingly, the trial court retained jurisdiction to rule on the appellant's probation violation. Moreover, the appellant admitted violating her probation by failing to report, pay fines, submit a DNA sample, or follow the law. Therefore, the trial court did not abuse its discretion in revoking the appellant's probation.

Further, a trial court has the authority to order the appellant to serve her original sentence upon a revocation of probation. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). The trial court had previously revoked the appellant's probation and allowed her again to serve her sentences on probation. Despite this largess, the appellant continued to violate the terms of her probation. Notably, contrary to the appellant's claims that she was "older" and "wiser," the appellant not only continued to violate the terms of her probation in the same manner that resulted in the first revocation, but she was also convicted of another felony offense shortly before the revocation hearing. Accordingly, we conclude that the trial court did not err in ordering the appellant to serve her sentence in confinement.

## III. Conclusion

Finding no error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE